We'll hear argument first this morning in Case 15-375, Supap Kirtsaeng v. John Wiley & Sons. Mr. Rosenkranz. Rosenkranz, Thank you, Mr. Chief Justice, and may it please the Court. When Congress modified the American rule in the Copyright Act, it was not just trying to punish those who took unreasonable positions. It wanted to encourage parties to advance important principles, even where the other side's arguments are good. Indeed, I would say, especially where the other side's arguments are good. When a defendant is trying to decide whether to fight for a principle, the availability of attorney's fees can make all the difference in that decision and, in turn, can make all the difference in whether the public's rights are vindicated. The Second Circuit's standard flouts the plain language of the statute, undermines Congress's goal, and is inconsistent with this Court's opinion in Coverty. It does nothing to encourage a defendant who has a good defense but is facing off against a powerful adversary armed with a reasonable position. That encouragement has not happened once in the last 15 years. That's not once in 187 cases decided under the Second Circuit's Matthew Bender rubric, and will never happen anywhere outside the Second Circuit. Ginsburg, if Kurtzing had lost this case, if he had lost this case, should fees have been awarded to Wiley, given the significance of this decision? I mean, it's an important decision. It needs both sides to be aired before the Court. So suppose he had lost and Wiley won. Would Wiley be entitled to attorney's fees? Wiley would have an argument, Your Honor, certainly on one of the factors that we have suggested, which is it would say we won an important case. It didn't win it against the Hill. It would have had more than that. It would have had circuit precedent. It could have been found willfully infringing, correct? If I were going to bet, I would say yes to that question, wouldn't you? I'm sorry. Our client would have been found to have been found to have willfully infringed. Right. So our client had a lot already weighing against him. But just to get back to finish the answer to Justice Ginsburg's question, but there would have been other factors. The court would have been, the district court would have evaluated what the incentives for both sides were. So Wiley would have had an enormous economic incentive to advance its position. Kurtzing would have had much less of an incentive to do anything other than to cave. Why it was a lucrative business he was engaged in. Your Honor, he was a student who had this side business who was making just a few dollars per book. I mean, it was a large volume, but the profit was a large volume. Several hundred thousand. Several hundred thousand dollars in revenues, Your Honor, but not in profit. And as to Wiley, as to the books of Wiley that he sold, it was $37,000, Your Honor, for which he was hit with a $600,000 judgment, which also would have been considered by the district court. It would have thought, it would have asked itself, is this fair? But the problem with the Second Circuit's position is that it prejudges in every case there is going to be substantial weight on the reasonableness. Mr. Rosenkranz, just to continue on with what Justice Ginsburg was asking you, as an ex-postmatter, you have a great David v. Goliath story to tell. But as an ex-antimatter, I wonder if the rule that you suggest is not going to harm the Kurtzengs of the world. And, you know, you might take in these couple of things into account, that the Kurtzengs of the world will probably think that the they are spending less on their lawyers than the John Wileys of the world, and that they're also more risk-averse because they have less money. So, you know, given those two factors, doesn't your rule actually, as an ex-antimatter, cut against the Kurtzengs of the world? Rosenkranz, Your Honor, the answer is no, and for this reason. The Kurtzengs of the world, when they are facing off against a John Wiley, the first question on their minds before they ever think about attorneys' fees being awarded against them is, how am I going to pay for this? And critical answer to that question will be, in many circumstances, there's the availability of attorneys' fees. Kagan. Well, but that's only one side of the question. I mean, what you're doing is you're upping the stakes generally, so that the Kurtzeng is going to know, well, it's true, I might be able to get my fees back, but at the same time, I run the risk of having to pay John Wiley's fees. And John Wiley, as I said, is probably going to be paying its lawyers more than I'm going to be paying mine, and I'm very risk-sensitive as a Kurtzeng type. So that's a huge deal for me to increase my stakes that much. Rosenkranz, Your Honor, understood. That will be part of the calculus. Now, in the Ninth Circuit, where the test that we are suggesting predominates, and in every circuit that doesn't accept the Second Circuit's position, which is to say every other circuit, there is not a dearth of copyright litigation. People in Kurtzeng's position are fighting ahead. And why is that? It's because district courts have been entrusted with making reasonable judgments and asking the question, if a defendant is in exactly this position in the next case, what are the incentives that will appropriately incentivize both the plaintiff to push on and the defendant? Robertson, I thought you told us that there haven't been any awards under the Second Circuit, maybe I misunderstood, the Second Circuit test in 15 years, or what was the point you were making at the beginning, 187 cases, 15 years? Rosenkranz, 178 cases, Your Honor, that were decided under the Second Circuit's Matthew Bender standard. Not once did any defendant, defendant, that is, ever prevail in receiving attorney's fees except where the plaintiff has been engaged in unreasonable  Robertson, but I thought your point, your point now is that the defendants in copyright cases still show up. Rosenkranz, no, Your Honor. I'm talking about the rest of the world. I'm talking about the Ninth Circuit. So in the Ninth Circuit, plaintiffs show up, starving artists show up, and starving artists defend. Robertson, and they don't in the Second Circuit? Rosenkranz, well, then the truth is there are very few starving artists in any copyright litigation. So, yes, they may show up, but they won't be able to pay for their own lawyer.  Alitoso, I would suggest that one of the solutions to that problem is for the district court to take into account the relative financial resources of the parties. Is that correct? Rosenkranz, yes, Your Honor, as one of the factors. So what the district court should do in every case, in addition to all of the footnote 19 factors, is to ask itself, if a party in the same position reads the precedents or their lawyers read the precedents, what lessons will they glean from them? And one of the things a district court should be analyzing in every case, looking backwards, is what would have been the right economic incentives for this plaintiff and this defendant? Alitoso, have we ever said that in a – have we ever said that the availability of attorneys' fees is dependent on the financial resources of the party? Rosenkranz, Your Honor, it certainly has long been a part of the standard that courts have consistently applied in attorneys' fees cases. This Court said in Fogarty, you've got to evaluate the incentives, and the incentives run both ways. John Wiley did not need attorneys' fees in order to proceed and was not worried about attorneys' fees in order to protect its interests in a $1.8 billion-a-year business for which, on this particular issue, it stood to gain hundreds of millions of dollars. It wasn't worried about whether it would have to pay Sam Israel's $125,000 in fees. Kurtzang, on the other hand, would have been worried about that under – under any standard, and in a standard where he stands to gain attorneys' fees for defending, that would have been an important incentive to – to encourage him to soldier on. Ginsburg, it does sound like, as Justice Kagan put it, that your rule is if David faces Goliath and David wins, David gets fees no matter how reasonable Goliath's position was. That's what it seems to come down to. Your Honor, it doesn't. On that factor of – I mean, there are easily six factors a court should be considering. On that factor, a David is better positioned than a Goliath to make the argument that he should get fees. But there's a lot more to it. There's what else does the defendant stand to gain? What does the plaintiff stand to gain? What were the motivations of the parties? One of the factors that the district court said was completely irrelevant was, what was the significance of the win to the public? So all of the So one thing that concerns me about a test like that, Mr. Rosenkranz, is it's very hard for people to make judgments ex ante and to figure out what their chances are. It's very hard to predict. And if you're concerned about the Kurtzangs of the world, the Davids in these kinds of suits, what you might want is a pretty clear safe harbor. In other words, if I'm taking a reasonable position, I'm not going to be stuck with the other side's fees, which are likely to dwarf my own. And that's something that somebody can predict, as opposed to this 22-factor test, which is like, I just don't know how this is going to come out, and I might well be stuck with John Wiley's draw and all number of other things that I don't have any control over. Rosenkranz, I understand, Your Honor. So what the Congress did was to select a standard based upon the totality of the circumstances. It affirmatively rejected the standard that sat there in the Patent Act and in the Lanham Act that was based on exactly the clear line that you've  Now, I don't know if this test is any different from the one that Congress adopted. It's exactly what you're going to do. Breyer, what is it? I suppose I start this thinking district judges do have a job. And part of that job, they do things that we would do worse, not better. And one of the things that they know is the case in front of them. And what we said in our case was it's up to them as long as they act reasonably. So you started with a factor which I guess they could have taken into account. Nothing in our law prohibits it. In fact, it encourages it. So what's the problem? What is it? Are you saying we should, in fact, change what we said in Fogarty? In my own mind, I don't know how to do it. Rosenkranz, no, Your Honor. Breyer, we don't want to do that. Okay. So you want case-specific correction of what you believe is a failure to apply to realize what Fogarty meant. Is that the idea? Rosenkranz, yes, Your Honor. So let me be more precise. I've already said one of the things that is wrong with the Matthew Bender standard, that it is a textualist. The second thing, directly to the question on Fogarty, is that Fogarty says, quote, Defendants who seek to advance meritorious copyright defenses should be encouraged to litigate them. There is nothing in Matthew Bender that encourages a defendant to litigate. Breyer, but you want us case-specific or you want us to say something? One whole result would be, the Second Circuit seems not to have taken account of what we said, which is that all considerations, all considerations that are consistent with the purposes of the Copyright Act can be relevant. It depends on the case, period. Absolutely, Your Honor, although I would add a little bit more. You wanted this other thing, which I don't know how to do. The other thing is whether you really advanced the law. I mean, maybe at the time, Marbury v. Madison was viewed by many people as being just about an appointment, and it didn't really advance the law. Your Honor — Maybe others thought it did. I don't know. How do we know which advances the law? Your Honor, district courts know what cases are advancing the law and what cases are not. Sotomayor, I think that Justice Breyer is getting to something. Put on a hat that doesn't want to win outright, okay? Put on a hat where you're trying to announce a rule. And I'm sympathetic to your argument that the Second Circuit rule obviously stacks everything in favor of a winning plaintiff, publish — winning copyright holder, because 80 percent are now winning, if not more. In the Second Circuit, it's almost 89 percent. It means, when you're talking about the reasonableness of a winning party's position, in most cases, the copyright holder has a reasonable position. So — and the defendant, by losing, tends to have an unreasonable position. I looked at what happened after Fogarty. And the — after Fogarty and Fantasy, that's where the Ninth Circuit test began. And the Court there said, there's different incentives for plaintiffs and defendants. You can't make the reasonableness of the position the centerpiece for prevailing defendants, or otherwise, they're never going to get fees, or hardly ever. So going back to Justice Breyer's question, how do we articulate what the Second Circuit is doing wrong without necessarily endorsing all of the factors of the Ninth Circuit? Rosenkranz. Understood, Your Honor. The simple answer is, what the Second Circuit did was to pick one factor out of a jumble of possible factors and say, this will be the one that gets a substantial weight. And what district courts do with that is then hold up that one factor and ask, is there anything that outweighs that factor, when in the context of a particular case, that might not be the most important factor. But I see the Court wrestling with the question. Sotomayor, so the test would be, it's okay to have it one among others, but not a presumption that says that's always going to entitle you to defend against an award or to win an award. Agreed. And what Matthew Bender does is essentially to announce a presumption. But I see the Court wrestling with how to articulate a test. I can articulate the test in four sentences in a way that district courts can administer. So our rule is that a district court should consider the totality of the circumstances, including all of the Fogarty factors, and ask itself, would a fee award here advance the purposes of the Copyright Act? Is this the sort of case in which, if the same scenario were to present itself again, the availability of fees would create the right litigation incentives, incentives, that is, for both parties, with the right result for the public. The district court should consider each of the Fogarty factors and do it through the lens of the purposes of the Copyright Act. It should also consider the significance and nature of the win and the litigation incentives on both sides of the fee, including any disparity in resources. That is, if this Court were to say those four sentences, district courts would have a lot of guidance. And if this Court were to say Fogarty 2 actually does it right, it didn't just consider litigation incentives on one side. It considered the litigation incentives for the plaintiff. Kennedy. But it seems to me that a party can advance the law, and a case can advance the law by insisting on principled, consistent application of settled principles. That's an advancement of the law. I can see the excitement about granting fees if there's some breakthrough, something we've never thought about. On the other hand, there's something that's commendable about applying the law consistently, routinely, in regular cases. That advances the law. Of course it does. And in the right case, that can support a fees award. For example, the only way to define fair use is case by case, accretively, where a common law develops. Someone who advances a fair use defense and wins ought to be at least within range of a copyright law. Ginsburg. Mr. Rosenfeld, let me go back to your test now. Would you say we'll make it something district courts can understand and readily apply? So take my question. Kurtzeng loses and Wiley wins. Apply your four-sentence test and tell me whether Wiley gets fees. Rosenfeld, the answer will depend on a district court-specific balancing. But I'll do the balance that I would do, that I would argue to the district court. I would say, well, first, Wiley did win something really big here, although it wasn't against huge headwinds. The precedent was in its favor. Good for Wiley. It gets credit for that. But Wiley had every incentive to protect hundreds of millions of dollars. It didn't need attorneys' fees in order to incentivize it. Kurtzeng also did something important. It stood up. He stood up. He had a reasonable position. That counts. It's not dispositive, but it counts. And what good would it have future litigants, would it do for future litigants to hit this poor guy who is a student with attorneys' fees when he's already got a $600,000 judgment against him? That would be my advocacy. I could see a district court adopting it. I could see a district court going the other way. But a common law will emerge, as it has in the Ninth Circuit. Impecunious defendants are not shying away from fighting a big copyright goliaths if they can afford the lawsuit that is to pay their own attorneys' fees. There's rampant copyright litigation in the Ninth Circuit and in the other circuits that don't start with a presumption against attorneys' fees if the other side was reasonable. Kagan, can I ask Mr. Rosenkranz, one of the things that confused me about this case and about, actually, both sides' arguments, I don't really understand why it is that the fees are awarded in such a high percentage of the cases, both in the Second Circuit and elsewhere. I mean, the Second Circuit says that it's the first among equal factors is the reasonableness. But it awards fees in more way more than half the cases. Is it that so many of the cases are utterly frivolous? Rosenkranz, well, so, Your Honor, the answer has two parts. There is a different test for defendants than for plaintiffs, notwithstanding what you read in Matthew Bender. So plaintiffs are so high for plaintiffs because plaintiffs are generally getting copyright fees, even if the other side was perfectly reasonable, because there's a blameworthiness element. So this, you know, this so-and-so infringer should be smacked with attorneys' fees. And, by the way, there's often willfulness, as there was in this case, because a legal defense is no defense. On the defendant's side, in the Second Circuit, it's certainly not more than half. It's around half. And that's only where the other side has behaved unreasonably, either in its litigation position, that is, the validity of its claim, or in its litigation positions, sort of aggressive tactics. Those are the only circumstances in 178 cases in which defendants have ever had copyright fees awarded in their favor. And this is something that we have yet to hear. Breyer, you know, it's oh, I have no idea why. I could speculate. One problem is that a lot of college students think they should listen to all the music they want, and they don't pay any copyright. That would be outrageous. Right? That's why I read that in the papers in other places as a problem. So maybe from time to time, the copyright owners feel that, you know, my employees have to pay for gasoline at Exxon. Why should Exxon's employees take all my works for free? Okay. So we have no idea why, at least from these briefs, I have no idea why the Therefore, I'm thinking, quite honestly, it's going to vary from case to case. I understand appellate lawyers love to create standards. I do not have that love at this moment. I would say that. I understand the lack of love. If that's what the what is motivating the Court, it should reject Matthew Bender. That might be. You could say we go back and say, have they taken what used to be an all-factors test, and have they, in fact, said, and then we could all go home. We say what they've done here is they've said, we're never going to or hardly ever going to take a favorable account of having clarified the law. And in your view, we should say as well, don't say never. Don't lay down a standard. There are too many different kinds of cases. Beware of trying to do that. That's what you want us to say. Yes. Yes. And I would also encourage the Court to say when a district court is evaluating each factor, it should be thinking to itself, what's the purpose? Now, you have added a couple of standards. Your first two sentences were fine. They said roughly what we've been talking about. And then you had two later sentences, which I began to think, hey, that's going to be a little tough to apply. Your Honor, my later sentences, you're right, were two sentences. One is, think of the Fogarty factors in footnote 9 and do it through the lens of the Copyright Act. And the second is, by the way, Fogarty was about more than footnote 19. It was about incentivizing each side correctly. Don't forget about that. So consider the incentives on both sides. Alitoso, the problem with that is that different judges are going to have very different views about what will further the purposes of the Copyright Act. Don't you think both the Second Circuit and the Ninth Circuit, I'm sorry, the Seventh Circuit rules are the rules that best further the purposes of a Copyright Act? Yes, Your Honor. And that's why both of them are wrong. I would love the Court to adopt the Seventh Circuit standard, but it, too, prejudges in every case, it says, here's what will further the purposes of the Copyright Act. Breyer, the footnote does not say, further the purposes of the Act. What the footnote says is, Judge, when you award these fees, be certain that you are faithful to the purposes of the Act. And that's very different. It means don't do something that's going to undermine the Act, as opposed to sitting there and figuring out whether the basic purpose of the Act is to what extent to encourage authors at the expense of the readers or the expense of those people who do not want to undergo huge transaction costs getting ahold of dead authors. All right. So we have several different conflicting purposes. You want to bring them in when you say further, and the Court did not bring them in because it said, are faithful to. You don't have to answer that. No, Your Honor, my answer is very short. Yes, I agree. I accept what I think is a friendly amendment to my description, Bogerty. Thank you, Your Honor. Thank you, counsel. Mr. Smith. Mr. Chief Justice, and may it please the Court, this is a case, I submit, where the lower courts did everything right. As courts have been doing in copyright cases for more than a century, the district court focused first on the question of whether or not the losing party here, Wiley, had taken an unreasonable litigation position on the law or on the facts and concluded that it obviously had not. And then it looked at all the other potentially relevant factors, including all of the factors that had been suggested by Kurtzang's counsel, and concluded that they were not. Except there is, Mr. Smith, I'm troubled by what's happening in the Second Circuit. I've actually, with the help of the library, looked at cases in the Second and the Ninth Circuit for the last three years, and this is what I'm coming out with. In the Ninth Circuit, prevailing defendants have received fees 20 times and lost 17 times, about 50 percent. In the Second Circuit, prevailing defendants have received fees three times and lost 16 times. It's a huge difference. If I look at what's happening with prevailing plaintiffs, in the Second Circuit, prevailing plaintiffs awarded fees 23 times, and prevailing plaintiffs denied fees seven. In the Ninth, prevailing plaintiffs got it 46 times and denied fees twice. Prevailing plaintiffs are winning everywhere in extraordinary numbers, and in both circuits, prevailing defendants are not winning hardly at all, at best 50 percent. 50 percent in the Ninth Circuit. So does it say something that somehow prevailing defendant, this presumption that the Second Circuit is giving is unfair to defendants and to the purposes of the copyright law? No, Your Honor. First of all, I would note that Mr. Kurtzang's own attorneys had reported that if a more complete study of the Second Circuit record says that defendants are winning them 50 percent of the time. I'm sorry, 50? Yes, Your Honor. That's in their reply brief. But that was a study from 2000, correct? No, no, no. They did their own study, and they reported that in their reply brief and said they would supply the data if you want. The 80 percent figure that they report for plaintiffs in the Second Circuit includes, by the way, a great number of default judgments where fees are both very small and not opposed. Having practice in this area, I know you're right. So, you know, these statistics can be thrown around, but it is not as if defendants in general are not succeeding in getting attorney's fees when they're appropriate. But what you could do to be fair is to say, well, you know, we have a problem in having one factor outweigh all others. It's much harder to start with a presumption up here, and all the other factors have to tie against that one to overcome it. Why don't we just have the Fogarty factors, which are it's one among many? Martinez, your Honor, two responses. First of all, when people – when judges are given discretion to award fees, looking at whether the losing party had a substantial case or not is something that instinctively you arrive at. That's the standard you enunciated in Octane for the patent. It's the standard that you enunciated in Martin for the removal statute. Of course, that's what you give a lot of primacy to in deciding whether in your discretion as judges you're going to shift fees, alter the American rule or not. That's just natural. It's what courts have been doing under the Copyright Act since 1909. That is the law that was reported to Congress when they reenacted this provision in 1976 in the Brown study, in the Register report. Congress understood that what the way the rule works is that fees are being shifted when one side or the other has an unreasonable litigation. Sotomayor, but since most plinkets are not going to sue unless their position is arguably reasonably present, shouldn't we be looking at how reasonable the defendant's position was? You do when they – when the plaintiff wins. When the defendant wins. When the defendant wins, if you have a rule that says we're going to shift fees against reasonable plaintiffs, then you're going to have the wrong incentives. When you have a case where both sides have a reasonable position, what you're trying to do in that case under Fogarty is incentivize both parties to keep litigating so that the law can be clarified. This is a classic example here. This is a case that was a complete coin flip because the law was totally indeterminate. Nobody knew whether the first-sale doctrine applied here or didn't apply here. There was no law in the Second Circuit when the case was filed. By the time the case gets to this Court, this Court has already ruled 4-to-4 that the – on the issue. So nobody was – it was a coin flip. And in that situation, the last thing you want to do to the parties, if you're trying to get them to keep litigating so that they get – the issue gets clarified, is tell them, oh, by the way, we're going to raise the stakes. Whoever wins is going to get fees, and whoever loses is going to have to pay double. That's just not the way risk-averse, profit-maximizing participants in litigation behave. If you want – you suppress litigation by imposing the British rule, presumptively, in this kind of case, because people simply aren't going to keep fighting. They're going to find a way to get out of the case. Kennedy, as you understand the Petitioner's position, do they take the argument you've just made about the necessity for continuing the litigation and then add a David and Goliath factor to it? Is that your understanding of their position or my – My understanding of their position, and it is a little hard to nail down, Your Honor, it seems to vary at times, is from pages 40 and 41 of the merits brief, the blue brief. And what they say there is if the result of the litigation is to clarify the law, then whichever party has the good fortune of being the winner, wins the coin flip, gets fees. That's what they say generally has happened. Breyer, he's departing from that. He's departing from that, at least. So you say, just don't say never. And, indeed, the Second Circuit did say never. It said a court should not award attorneys fees. Were the cases novel or close because such a litigation clarifies the boundaries of copyright law? I certainly did not say never, Your Honor. The rule in the Second Circuit is that other factors can overrule that. And, indeed, the court has – the Second Circuit has so said. They have a rule. So they wrote this here, and they were quoting. It says, as this Court has reasonably explained. Am I in the right place? I'm in page 18a, 19a of the – of the petition. Maybe I'm reading the wrong opinion. That's been known. That's a – and what they do is they quote. It says, as this Court recently explained. And it seems to me they underline the word not, so I may not have read it properly. I don't know. But, Your Honor – But, anyway, your position is it shouldn't be never. And maybe everybody agrees. That is the law in the Second Circuit. The Viva Video case, the Selewski case, both cited in the Second Circuit. Mr. Smith, when you have a system, which the Second Circuit does, of saying, look, this is the first among equal factors, and you need something, you know, pretty exceptional to outweigh this factor, if I'm a district judge and I'm thinking, you know, who likes to be overruled by the Second Circuit, it does seem as though it sends a pretty strong signal to district courts that this is the key factor and that they are not, you know, probably not in their lifetimes going to see a case in which that factor is outweighed. The factor that can outweigh it and has outweighed it is litigation misconduct. So you end up in the Second Circuit with a rule very much like the rule that this Court enunciated for patent law, which is, if the case is unreasonable on either side or if there's been something that has magnified the cost of litigation through litigation abuse, those are situations in which courts appropriately and their discretion should award fees. But if we have two reasonable parties litigating appropriately, and we don't – they simply don't know who's going to win because the law is unclear, we don't want to raise the stakes in that situation because those are the people you want to keep fighting. And this case is a perfect illustration. At the point where this case is going to go to this Court, you've already divided four to four. Nobody knows where Justice Kagan is going to come out on the issue. First, Kurtzang has to decide whether to file that cert petition. He knows at that point that he's going to get free representation. But if you had Petitioner's rule in effect, he would also be – know that he had a 50 percent chance of losing in this Court and having to pay all of John Wiley's attorney's fees. Robertson, you mentioned that he's getting free representation. Do you – you mentioned the fact that he was represented by pro bono counsel. Is that a factor that the Court should take into consideration? I think it can affect some of the other factors that are relevant under Fogarty, in particular, the need for compensation. You don't need to compensate Mr. Kurtzang for a representation that he didn't pay for. Well, it seems to me that's quite an intrusion into the relationship between the – the party and – and counsel. I mean, do you look at it and say, oh, well, you have discovery about whether – what the relationship was between him and his counsel, with the counsel giving a discount in fees and all that? I'm not sure that should be a pertinent consideration. Perhaps not. I mean, it didn't have any major impact on the outcome here, but it certainly was something that the district court mentioned. And, in fact, the Second Circuit kind of disagreed with him on that in a footnote, in their opinion. But the main thing is that you don't want to have a rule that says, if you file that cert petition, Mr. Kurtzang, you're going to be 50 percent chance you're going to have a big bill at the end of it. And even from the point of view of John Wiley, sure – sure, it's a big company and it's a repeat player and everything, but look where they were. Once Mr. Kurtzang files that cert petition, if Petitioner's rule is in place, they know they have a 50 percent chance of losing in the Supreme Court and having to pay not only all their lawyers' fees, but all of Mr. Rosenkranz's fees. Roberts. Are you seriously suggesting it's a tough call for them whether to oppose the cert petition or not? Well, maybe not. But I think it's important to look at the economic situation. They had a $600,000 judgment, and they would have known, under his rule, they had a 50 percent chance of winning and paying several million dollars in fees. What are the annual revenues of your company? Mr. Rosenkranz said $1.8 billion. Maybe that's correct. I don't know, actually, Your Honor. But it is certainly a substantial publishing outfit, and it's a repeat player. It had incentives to litigate this case. But I don't think you can do these things sort of after the fact, based on each party's particular incentives. You need a rule that says to people, here's how we're going to decide these things, so you have predictability, so people can tell whether or not this is likely to be the case. Sotomayor, the problem with your situation is that you're looking at incentives. If I'm Wiley, I'm looking at this and saying, there's a 90 percent chance, 80 to 90 percent chance I'm going to get fees, because willful infringers, and that's the judgment that was being defended below, almost always the winning plaintiff gets fees. If I'm a defendant, I'm Kurtzanger. I know that the probabilities taking Mr. Rosenkranz's numbers are that maybe 50 percent of the prevailing defendants gets fees. If without pro bono counsel, do you think he would have continued? I assume he probably would have gone into debt for it. I don't know the answer, but the incentives are very, very different for a defendant who's being asked to go on with the litigation because the likelihood of them getting I think there was never any significant likelihood of anybody getting fees under a proper application of the Second Circuit's rule here, because obviously both sides had objectively reasonable positions, and I just don't think that that is something that would have happened in this case. Sotomayor, you've got a willfulness found below. How do you get a willfulness found in a situation where you know there's a circuit, where there's a chance of a split court, four to four? Well, but the conduct was intentional, but the law was 50-50. There was a complete coin flip. And so it seems to me that while he says we don't want to pretermit discretion here, the reality is you have to have some structure to the decision-making so people can predict what the outcome's going to be and be incentivized. Otherwise, you just have a black box. You say, well, each district judge takes six factors. We're not going to really tell you how to decide them. And then you're not doing what Fogarty asks. What Fogarty asks is use the fee decision, whether to award fees, how much, to incentivize people to clarify the law because of the peculiar importance of copyright having the law. Sotomayor, are you asking us in our decision to endorse the Second Circuit test and reject the Ninth Circuit test? Articulate it the way that the Ninth Circuit does? What exactly the Second Circuit test does? Ask us exactly what you want us to announce with respect to what the test should be or not be. We think the Second Circuit's test makes eminent sense and ought to be upheld. I would note, though, that since all of the factors here went the same way in the judgment of the district court, even if you decided that they shouldn't be giving substantial weight to one factor, there wouldn't be a basis for a reversal on this particular case. But we do think that starting with the objective reasonableness makes a lot of sense. It leads to the right outcome and the right incentives, and it gives people some basis for being able to figure out what's going to happen in the case and decide which cases to litigate to the end and which cases to settle or simply to abandon. Ginsburg. But have you answered the argument that you referred to patent cases, but the patent statute says fees in exceptional cases. Right. The Copyright Act doesn't say that. I think that is, in fact, how it's played out. The fees are much more rare in patent cases than they are in copyright cases. It's clearly not true that they're exceptional in copyright cases. Quite the opposite. It's clearly a large majority of cases are having fees awarded. The point, though, is even if you layer on that exceptionality requirement, the factors that you look at, was it badly litigated, should it not have been litigated, was there a reasonable basis, was there abusive conduct, that's the factors you look at. That's what courts have always looked at. Why would you look at something else? I mean, that is the reason why one awards fees, is either because somebody brought a case they shouldn't have or litigated a defense they shouldn't have or abused the process. And you have a view, Mr. Smith, as to why it is that this reasonableness inquiry is producing such skewed results as to plaintiffs and defendants, because as a logical matter, you would think it shouldn't, that there wouldn't be this skew. Unless you really think that defendants are taking so many more unreasonable litigating positions. And I guess that could be. But is there any other explanation or any, you know, thoughts you have about that? Part of it is the default judgments, where fees are routinely awarded because there's nobody there to oppose them in very small amounts. But I think the other thing is, as the government points out in their brief, plaintiffs decide when to bring cases. Defendants don't decide when to be defendants. And there are a lot of intentional infringers of copyrights out there in the world that we have now. And so people – it would be bizarre in a way if plaintiffs didn't have a higher percentage of claims that were reasonable, because they decide what case to bring, and they know that they're going to be expending money, and this is – they invest in this case, and they decide to go ahead, whereas defendants are simply often just caught. You know, they were hoping to just slide under the radar screen and put these infringing photographs up on their website or whatever it may be. And so it doesn't strike me as surprising at all, actually, that we have this disparity. It doesn't mean that the standard is unfair or is anything less than even-handed. It simply means that the facts on the ground are leading to a difference in the outcome in percentages, which we have a lot of different percentages here. But, you know, a lot of defendants are getting fees, too, even in the Second Circuit, according to their own statistics, half the time. So it's not like it's entirely one-sided. If the Court has no more questions. Roberts. Thank you, counsel. Ms. Goldenberg. Goldenberg. Mr. Chief Justice, and may it please the Court. I'd like to start by picking up on this point that's gotten a fair bit of discussion about what the statistics are in the Second Circuit under the Matthew Bender Standard, which says that objective reasonableness should be given substantial weight. Looking at hundreds and hundreds of cases in the Second Circuit in the district courts, I think that there's a lot of discretion that one can exercise in deciding whether to include cases in your count or not include cases in your count, whether you include default judgments, whether you include declaratory judgment situations, whether you include situations where the Court says, as a technical matter, you can't get fees because your motion was late, but in the alternative, if I were to consider it, I would go on to award or not award you fees anyway. So I think that there is some ground to quibble with some of the statistics. And I can tell you what statistics I came up with when I did this look, which are a little bit different, and I think show that there's not this vast disparity. And the statistics, this is in the district courts in the Second Circuit from Matthew Bender on, show that, including default judgments in the count, 77 percent of the time when plaintiffs asked for fees, and it was decided on the merits in a reported decision, they got fees, and 53 percent of the time when defendants asked for fees. But if you drop out those default judgments, which, as Mr. Smith indicated, are situations where the fee motion is effectively unopposed, where I think the defendant often looks very unreasonable by not having shown up to defend the case, and where the fee amount is quite small by necessity because not much has happened in the case, then the numbers start to look much more similar, 59.7 percent for plaintiffs, 53 percent for defendants. So if there's not this huge gulf between the percentages of time when the plaintiffs and defendants are getting fees, at least by my count, and as I say, I recognize that there are different ways to do this count. So I think you have to take all these numbers with a little bit of a grain of salt. But I don't think any standard in the world would give you equal numbers of plaintiffs and defendants getting attorney's fees. And Matthew Bender test is neutral. It is evenhanded on its face. It says very clearly that plaintiffs and defendants should be treated in the same way, and if the Court thought that that somehow weren't being carried out properly in the Second Circuit, I think the Court could emphasize that, and it wouldn't be a reason to reject the Second Circuit's test. With respect to giving objective reasonableness substantial weight, I would like to point out that that is the approach that this Court took in the Martin decision, which was a case about removal and remand, and which involved Martin v. Franklin, which was a case that involved a statute that, much like the statute here, just gave broad discretion to district courts without a lot of standards to guide them. And what the Court said in that case is discretion isn't whim. In order for like cases to be treated alike, district courts' discretion should be guided in certain ways so that there can be predictability and so that there can be that principle of justice can be upheld, even in the absence of expressed statutory restrictions. Robertson, you didn't have the sort of situation you have here where you're concerned about encouraging people to move for remand or discouraging people from filing for fees under remand. It was a policy sort of pushed all one way in Martin. Well, it's true that only one side in Martin could get fees. That's true, that it's the when the case is remanded, so the person's been unsuccessful in removing. That's when fees are awarded. But nevertheless, like any fee-shifting statute, it is taking into account incentives on both sides, whether you should try to remove the case, whether you should move to remand the case if you're on the other side. And what happens in the copyright world because of this Court's Fogarty decision is that those incentives are judged as to plaintiffs and defendants because both of them can get fees. But I don't think the underlying policies are different. In Martin, the Court wasn't looking at anything that was specific to that statute, to its history, or to any policy that was specific to that statute at all. But what the Court said was objective reasonableness is the touchstone. And, yes, it may be true that in some cases where the losing party has been objectively reasonable, fees are appropriate in any event because this is an equitable matter, and we don't want to restrict the district court's discretion, and it's hard to imagine every single case that could possibly come up in the future. And that is equivalent to what the Second Circuit has done here. So it's very consistent with the approach that the Court has taken to other fee-shifting statutes where there is broad discretion. And it is also – Kagan. Kagan. Sotomayor, Mr. Smith suggested that he thought that the times in which the reasonableness inquiry would be outweighed is if you see real litigation misconduct. Is that your sense, too, or is there anything else that actually is capable of outweighing it? My sense is that that is probably going to be the most frequent circumstance in which it would be outweighed. And there are, as Mr. Smith pointed out, some cases in the Second Circuit like that, Viva Video, Zalewski, cases where even though the losing party was objectively reasonable, the Court said there's been some misconduct here, and so an award of fees may be appropriate, or the district court should go back and see if there was misconduct here. But there are other examples as well that I'd like to point out beyond that. And one example comes from the Sixth Circuit, and there are cases called WB Music and Bridgeport Music, and that was a situation where a plaintiff indiscriminately brought hundreds and hundreds and hundreds of claims, some of which were objectively reasonable and some of which were not objectively reasonable. And what the Court said there was, yes, it's true that your claim was objectively reasonable, even though you didn't succeed, but you've proceeded in this unreasonable fashion, and so there's a strong deterrence factor that's playing in here. We don't want people to do this. We want to stop people from doing this in the future, and so we're going to award attorneys' fees in that situation. That is related, I think, to litigation misconduct, but it's not exactly the same thing, and it is a deterrence. It's focusing on the deterrence factor in the Fogarty footnote. There's another example that's an example from the district courts in the Second Circuit. It's a case called Tips Exports. It's an Eastern District of New York case, and that's a case where the defendant lost, and what the Court said again was that there's the deterrence factor that comes in here. The defendant was reasonable, objectively reasonable in the position on the facts in the law, but it appears that the defendant is going to take this just as a cost of doing business and keep on engaging in infringing conduct because the award of fees isn't enough. I'm sorry. The award of damages is not enough to stop it. So in that situation, again, deterrence will override the fact that the losing party was objectively reasonable. So I do think they can come up. Roberts, is it pertinent in the government's view whether or not the party-seeking fees was represented by pro bono counsel? I think it would be pertinent if you were to adopt an approach like Petitioner's approach where you took financial condition of the parties into account. If you're going to do that, then I think you would certainly need to look to see whether someone who appeared to be an impecunious party was actually represented pro bono and was not responsible for their fees. But I take some issue with what Petitioner's counsel said, that the financial condition of the parties is something that courts look to when they're deciding whether to make a fee award in the first instance. I'm not aware of any other circumstance where the courts look to the financial condition of the parties under a fee-shifting statute to decide whether to award fees on a granular level. In other words, they look to the specific finances of the specific party before them. They certainly look at it when it comes time to decide what the amount of a fee award should be if they've already decided that they're going to award fees. And that, I think, is perfectly appropriate. And you'll see district courts in the Second Circuit under the Matthew Bender standard doing exactly that. If they have a very unreasonable pro se plaintiff, for instance, they will say that a fee award may still be appropriate if that party loses, but perhaps the amount should be set lower. It will still be a deterrent to that person, but it won't be financially crushing to them. Breyer. Breyer. Bogerty says, it adds, the need in particular circumstances to advance considerations of compensation and deterrence. Yes. It lists the reasonable fact, you know, reasonable position as one among four. It says there could be others. Why? Why not stop right there? Maybe Marbury was a poor man. Maybe he didn't even want the job. Maybe he was just trying to try to create a situation where this country would have a structure of judicial review. I mean, can they take things like that? Why not? I mean, I don't know. It has to be consistent with the Act. Why are we suddenly picking this one thing out of what could be a bunch of things? For a number of reasons. First of all, if you look at the factors that are mentioned in Bogerty, they actually many of them center around objective reasonableness, frivolousness, deterrence, motivation. All of those are kind of circling around this concept of objective reasonableness, which, as I pointed out, is pretty common to the Court's approach to other fee-shifting statutes, not only in Martin, but also, as Mr. Smith explained, in Octane. So that's one example. There's another example, another reason, though, that's very grounded in the Copyright Act itself, and that is the history of the Copyright Act and the ratification that Congress engaged in in 1976 when it chose to readopt essentially the same language from the 1909 Copyright Act, as to which courts have, through exercise of their discretion over many years, worn a groove that said, generally, when a losing party is reasonable, fees are not going to be appropriate. That's equivalent to the Second Circuit's standard. Congress had every reason to know that that was the law under the existing language because Congress was presented by experts, by the Register of Copyrights, whose Brown study, which was an expert copyright office study that Congress had commissioned, all of these authorities said that. And so Congress had good reason to know that it was true.    And so Congress had good reason to know that it was true. Kagan in this solely as a policy manner, if you didn't think that evidence was all that overwhelming, why is it that this factor should be first among equals? For the – I think a lot of the reasons that Mr. Smith explained with respect to incentives. When you make that factor important, you're encouraging reasonable arguments, you're discouraging unreasonable arguments, you're increasing the chances that the law will not be clarified, and you're encouraging that close cases where both sides are reasonable are going to actually get litigated to their conclusion, and therefore, the law of copyright will be clarified, which is what this Court called for in its Fogarty decision. If, on the other hand, you adopt something like the standard that Petitioner at least set forth in his brief, where you privilege the precedent-setting nature of the decision, then you have this tremendous unpredictability, tremendous uncertainty, and risk-averse parties are going to be deterred, and they Thank you, counsel. Five minutes, Mr. Rosenkranz. Rosenkranz. Thank you, Your Honor. So Justice Ginsburg's question, which got picked up through the course of the argument, I think really gets to the nub of the matter. The magic language in Mr. Smith's presentation is that the Second Circuit has adopted the Patent Act standard. The Patent Act standard is different, and if octane means anything, it is we read the words that Congress actually wrote, exceptional circumstances this Court defined, and exactly the way that the government and Wiley are defining this standard, we have to take Congress at its word that it meant something different. Ginsburg. But it does mean something different in practice because, as we were just talking about, there's a much higher number in copyright cases. Rosenkranz. Yes, Your Honor. And that's because in every circuit but the Second Circuit, the district courts apply a different standard from the Second Circuit standard. That's why you have the Second Circuit, and what was it, 50 percent of the defendants and 70-something percent, whatever. It's a much higher percentage than in patent cases. Rosenkranz. Agreed, Your Honor. And it's important to understand why. Our numbers are 44 percent and 85 percent. One can quibble about the numbers. But I have to emphasize, neither Mr. Smith nor the government has come forward with a single case in which a defendant got fees where the plaintiff was not being reasonable. In every single one of their cases in the Second Circuit, when a defendant got fees, it's because the plaintiff's position was unlegal, was unreasonable, or the plaintiff took unreasonable positions within the litigation. There is not a single case in the Second Circuit where anything other than unreasonableness carried the day. I want to say a word about history because there's been a lot of suggestion that the history before 1976 in the Copyright Act was an exceptional circumstance. It wasn't. There is not a single case that the government or Wiley has cited, not one case that adopts the Matthew Bender standard across the board. So, sure, that is pre-1976 I'm talking about. So, sure, there were a lot of cases where unreasonable plaintiffs or defendants were hit with fees. There were cases where the reasonableness of a position for the district court carried the day, but not one case that ever said, here's how we should figure this out. All of the studies that the government has referred to are studies that admitted that there was actually no one standard. This Court has quoted the – I'm sorry. This Court in Fogarty underscored that there was no standard that predated 1976. And even the cases that Wiley cites, half of them are cases where one of the parties was unreasonable. That leaves only four cases, and those are all cases that are consistent with what we're saying the rule was. Final point. If we're talking about incentives, the difference between my position and Mr. Smith's position is that he wants a rule that decides up front for all district courts that this is the weight you will put on something, and I want a rule consistent with Congress's language and the use of the word may that trusts district courts to figure out what the right incentives and disincentives are and to figure out what the value is to put on reasonableness. Alitoson That's an awfully hard task for district judges to perform. What are the – you know, what is – what will further the purposes of the Copyright Act, or what is most faithful to the Copyright Act? District court judges are going to see that very differently, and there won't be any consistency if that's what they're required to do or authorized to do. Gannon Your Honor, what will emerge is what's emerged in the Ninth Circuit, a common law of equity where courts are following each other's decisions, and, yes, there will be some variability, but the variability is invited by Congress in the word may. Unreasonable litigants will always be hit with attorneys' fees, not because there's any particular weight put on it by a court of appeals, but because that's what district courts will do. But reasonable positions should be hit with attorneys' fees or not, depending upon whether the court believes that the public was benefited by the litigation position. Roberts Thank you, counsel. Gannon No further questions. Thank you, Your Honor. Roberts Case is submitted.